### CAMPO v. NIEMEYER.
### No. 9986.

United States Court of Appeals
Seventh Circuit.

May 2, 1950.

Harold O. Mulks, Chicago, Ill., for appellant.

Francis M. Cooper, Chicago, Ill., Harry A. Biossat, Chicago, Ill., for appellee.

Before KERNER, DUFFY and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

This is an appeal from a judgment dismissing plaintiff's complaint for lack of jurisdiction. The suit was brought against Grover C. Niemeyer, Daniel Covelli, Reuel H. Grunewald and Frank O. Koepke to re-

cover $125,000 for damages alleged to have been sustained by plaintiff.

Defendant Niemeyer is a judge of the Superior Court of Cook County, Illinois, and as such assigned by an order of the Supreme Court of Illinois to act as a Justice of the Appellate Court of Illinois, first district.[1] Covelli is a master in chancery of the Circuit Court of Cook County, Illinois. Grunewald is an attorney at law and as such represented Koepke in a certain foreclosure proceeding involving the real estate described in the complaint in this case. In that foreclosure proceeding plaintiff was named as a defendant under a general allegation that she claimed some interest in the premises sought to be foreclosed.

In substance, the complaint alleged that prior to January 4, 1938, Albert R. Freed, plaintiff's father, was the owner of the real estate and remained the owner thereof until his death on January 4, 1938; that at the time Freed acquired title to the real estate, there was unreleased of record, a purported trust deed to secure the payment of a note for $3,500, but which in fact was null and void; that Freed died intestate leaving him surviving Fannie Freed, his widow, Morton D. Freed, his son, and plaintiff, his daughter, his only heirs at law; that on January 25, 1938, Morton, the son, filed for record a forged warranty deed, dated December 14, 1936, purporting to be executed by Albert R. Freed and Fannie Freed, his wife, conveying the real estate to Morton; that Morton and the defendants, Grunewald and Koepke, well knowing that the purported warranty deed was a forgery and that the trust deed and the note secured thereby were invalid, conspired to commit certain fraudulent and illegal acts to defraud plaintiff of her interest in the real estate; that as a part of the conspiracy and for the purpose of making it appear that one Schumacher was the owner of the real estate, Morton and his wife executed a quitclaim deed conveying the real estate to Schumacher, and Morton delivered the invalid $3,500 note and trust deed to Koepke in

---

1. § 29, Ch. 37, Ill.R.S. provides: "The supreme court of this state shall assign twelve of the judges of the circuit court of this state, to duty in said appellate courts as follows: Three of them to the first district * * *."

order that Koepke might institute a fraudulent foreclosure proceeding against Schumacher, naming plaintiff as one of the defendants; that Grunewald as Koepke's attorney on May 7, 1942, filed a complaint in the Circuit Court of Cook County, Illinois, to foreclose the purported trust deed; that to prevent plaintiff from learning of the pendency of the proceedings, Grunewald filed a false affidavit in which he stated that plaintiff on due inquiry could not be found so that process could not be served upon her, and as a consequence whatever service of process was had was by publication, and since she had no knowledge of the filing of the foreclosure complaint, an order of default was entered against her and on November 24, 1942, Grunewald and Koepke, pursuant to the conspiracy, procured by deception and fraud, a decree of foreclosure which contained a finding that Koepke had a valid lien on the real estate, and the real estate was thereafter sold to Koepke by a special commissioner appointed by the court to conduct a public sale of the real estate.

The complaint also alleged that in February, 1944, after plaintiff had learned of the entry of the foreclosure decree, she petitioned the foreclosure court to vacate and set aside the decree on the ground that the court had not obtained jurisdiction of her person; that the court granted the prayer of her petition and on March 13, 1944, the decree of foreclosure was vacated as to plaintiff, but Koepke appealed from that order to the Appellate Court; that in that court, Niemeyer, with David F. Matchett and John M. O'Connor, both now deceased, pretending to be members of the Appellate Court,[2] and pursuant to the conspiracy to defraud plaintiff of her property, conspired with Grunewald and Koepke to defraud and swindle plaintiff of her interest in the real estate in question, and entered an order reversing the order of the foreclosure court, Koepke v. Schumacher, 324 Ill.App. 315, 58 N.E.2d 198. The Supreme Court reversed the Appellate Court and directed that Koepke's appeal be dismissed, Koepke v. Campo, 391 Ill. 355, 63 N.E.2d 507. The Appellate Court being of the opinion that the "merits of Koepke's appeal were not considered by the Supreme Court" did not dismiss the appeal but again reversed the order of the foreclosure court, Koepke v. Schumacher, 328 Ill.App. 113, 65 N.E.2d 224; and thereafter plaintiff filed a petition for mandamus against the Justices of the Appellate Court. The writ was granted, People ex rel. Campo v. Matchett, 394 Ill. 464, 68 N.E.2d 747. The order was obeyed; Koepke's appeal was dismissed; and the foreclosure proceedings were referred to defendant Covelli as master in chancery.

The complaint further alleged that after the foreclosure proceedings had been referred to Covelli, Covelli joined and became a party to the conspiracy, and it is alleged that Covelli, as one of the conspirators, agreed with the other co-conspirators to aid them in defrauding and swindling plaintiff of her interest in the real estate in that he would make findings against plaintiff; that pursuant to that conspiracy, Covelli prepared a report in which he maliciously and corruptly made certain controlling findings in favor of Koepke. Thus ends the complaint.

In the view we take of this case we need only decide whether the District Court had jurisdiction.

We note that here there is no diversity of citizenship. In such a situation, to confer jurisdiction on a federal court, a right or immunity created by the Constitution or the laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. Viles v. Symes, 10 Cir., 129 F.2d 828, 830. Plaintiff argues that defendants have been guilty of conduct which deprived her of rights guaranteed to her by the Fourteenth Amendment to the Constitution of the United States, and

2. This assertion is made on the ground that neither of these Justices had subscribed to an oath to faithfully discharge the duties of a Justice of the Appellate Court. However, it is not stated in the complaint that Judge Niemeyer was not a judge of the Circuit or Superior Court of Cook County and that he did not take an oath as Judge of the Superior Court of Cook County, Illinois.

she asserts that her suit is predicated upon sections 43 and 47(2) of Title 8, and sections 41(1) and (14) of Title 28 U.S.C.A., now sections 1331 and 1343 of the Federal Judicial Code.

The Fourteenth Amendment prohibits a State from depriving any person of life, liberty or property without due process of law; but this adds nothing to the rights of one citizen against another. It simply furnishes an additional guaranty against an encroachment by the States upon the fundamental rights which belong to every citizen as a member of society. United States v. Cruikshank, 92 U.S. 542, 554, 23 L.Ed. 588, and Twining v. State of New Jersey, 211 U.S. 78, 97, 29 S.Ct. 14, 53 L.Ed. 97. It is State action of a particular character that is prohibited. Individual invasion of individual rights is not the subject matter of the amendment. In re Civil Rights Cases, 109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835.

In our case the complaint alleges no more than plaintiff's involvement in litigation in the courts of Illinois. The gravamen or real ground of plaintiff's suit is that defendants maliciously and corruptly conspired to defraud her of her property. Despite the vituperative accusations against defendants, a fair reading of the complaint discloses that she complains only of an alleged invasion of a private right. She was not subjected to any greater hazard than any other citizen of Illinois who is called upon to defend a law suit. Not every denial of a right conferred by state law involves a denial of the equal protection of the laws. Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497; Mitchell v. Greenough, 9 Cir., 100 F.2d 184, and Bottone v. Lindsley, 9 Cir., 170 F.2d 705. We think the complaint was insufficient to make out a cause of action for a conspiracy to deprive plaintiff of the equal protection of the law under the Civil Rights Act.

At this point we think it not out of place to note that on March 22, 1950, the Supreme Court of Illinois, in the case of Koepke v. Schumacher, 406 Ill. 93, 92 N.E.2d 152, held that the warranty deed executed by Albert R. Freed and Fannie Freed, his wife, conveying the real estate to Morton D. Freed was not forged, and as a consequence that plaintiff had no interest in the real estate. Nor can we close the discussion of this case without calling attention to the fact that of the three Justices of the Appellate Court of the First District of Illinois, two, Justice Matchett and Justice O'Connor, before their decease had been members of the Judiciary of Cook County for more than 30 years, 329 Ill.App xxiv and 335 Ill.App. xxiv, and together with Justice Niemeyer earned and enjoyed enviable reputations in the performance of their duties.

Affirmed.