451 F.2d 394
 Johnnie TASBY, Appellant,
v.
UNITED STATES of America, Appellee.
Booker T. BURKHALTER, Appellant,
v.
UNITED STATES of America, Appellee.
Joe Willie FEGGETT, Appellant,
v.
UNITED STATES of America, Appellee.
Paul Lawrence BRYANT, Appellant,
v.
UNITED STATES of America, Appellee.
 Nos. 20357-20360.
 United States Court of Appeals,
Eighth Circuit.
 Nov. 11, 1971.
Rehearing Denied in No. 20358 Dec. 10, 1971.
Rehearing and Rehearing En Banc Denied Dec. 17, 1971.
 
 John B. Hainen, DeQueen, Ark., for Johnnie Tasby.
 Paul Henry Kidd, Monroe, La., for Booker T. Burkhalter.
 Howard Waldrop, Texarkana, Ark., for Joe Willie Feggett.
 Royce S. Weisenberger, Jr., Texarkana, Ark., for Paul Lawrence Bryant.
 James A. Gutensohn, Asst. U. S. Atty., Fort Smith, Ark., Bethel B. Larey, U.S. Atty., for appellee.
 Before GIBSON, HEANEY and BRIGHT, Circuit Judges.
 BRIGHT, Circuit Judge.
 
 
 1
 On January 8, 1970, Johnnie Tasby, Booker T. Burkhalter, and Paul Lawrence Bryant broke into the Emmett Vickers home in rural Texarkana, Arkansas, and, at gun point, kidnapped fifteen year old Karen Vickers, who was at home with her mother. An accomplice, Joe Willie Feggett, waited outside in a getaway car. The four kidnappers took Karen across the Arkansas border into Texarkana, Texas, and held her, first in an apartment of defendant Hugh Mulzac Smith, and later in a Texarkana, Texas, motel room, subject to a $40,000 ransom demand. These five men subsequently stood trial before a jury in federal district court in Texarkana, Arkansas, on charges of interstate kidnapping in violation of 18 U.S.C. Sec. 1201, interstate communication of a ransom demand in violation of 18 U.S.C. Sec. 875, and conspiracy to engage in interstate kidnapping in violation of 18 U.S.C. Sec. 371. The jury acquitted defendant Smith, but found the others guilty as charged. Judge Paul X. Williams thereupon imposed substantial sentences on defendants-appellants. Each appeals, raising a number of issues.
 
 
 2
 Tasby, Feggett, and Bryant assert that the trial court erred in failing to grant their pretrial motions for separate trials, and in refusing to order a change of venue to remove the adverse effect of extensive pretrial publicity. All of the defendants, except Tasby, challenge the voluntariness of confessions which they made to FBI investigators. In addition, Burkhalter and Feggett raise questions relating to the legality of their arrests. Feggett asserts that the trial court erred in refusing to grant a continuance. Tasby contests the denial of his motion for a new trial, alleging misconduct of the prosecutor. He also alleges that the trial judge committed other error in the conduct of the trial. Bryant, in a pro se presentation to this court, questions the adequacy of the representation which he has received from his counsel on this appeal. Finally, Burkhalter asserts that the trial court erred in admitting testimony of the sheriff which described the course of the investigation. We reject appellants' contentions and affirm their convictions.
 
 
 3
 The evidence established that the police rescued kidnapped Karen Vickers from the custody of appellant Bryant. An independent eye witness recognized appellant Tasby as one of a group of men taking Karen into defendant Smith's apartment in Texarkana, Texas. Law enforcement authorities traced the initial telephone call demanding ransom to a pay telephone located in the Harlem Inn, a bar in Texarkana, Arkansas. Appellant Burkhalter was identified as the person who had used that telephone at about the time that this initial ransom call was made. He was arrested at the Harlem Inn. Tasby and Feggett were arrested a short time later as they were leaving the Harlem Inn. Police released all three men the next day after defendant Smith telephoned a warning that Karen was in danger unless the three were set free. Smith, thereafter, was questioned by police and led them to the motel where Karen was being detained. Following the safe recovery of Karen and the arrest of Bryant and Smith, the police rearrested Burkhalter, Feggett, and Tasby. At trial, special agents of the FBI testified with regard to confessions which were made by each of the defendants. Tasby alone took the stand in his own behalf, and, while relating an incredible story suggesting complicity of Karen's father in the kidnapping, he strongly implicated each of the appellants in the kidnapping caper.
 
 
 4
 We turn first to the contention that the trial court erred in failing to order a venue change to another judicial district pursuant to Rule 21(a), Fed.R. Crim.P. Appellants assert that an underlying prejudice existed because the defendants, all blacks, were charged with kidnapping a white girl, which fact was aggravated by pervasive newspaper, radio, and television publicity concerning the crime and the apprehension of the defendants. At a pre-trial hearing on this issue, defendants introduced evidence of the news media coverage in the case, as well as testimony from several local citizens who felt that defendants could not obtain a fair trial in Texarkana, Arkansas.
 
 
 5
 In rejecting the motion for a change of venue, the trial court appropriately applied the test enunciated in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966):
 
 
 6
 * * * [W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity. [Id. at 363, 86 S.Ct. at 1522]
 
 
 7
 In applying this test to the instant case, the trial court found that "[t]he proof from all sources fails to show that there is any reasonable likelihood that the defendants or any of them will be deprived of a fair trial." Although the trial court possesses a broad range of discretion in this area, see, e. g., Koolish v. United States, 340 F.2d 513, 527-28 (8th Cir. 1965); Kilgore v. United States, 323 F.2d 369, 371 (8th Cir. 1963); Blumenfield v. United States, 284 F.2d 46, 51 (8th Cir. 1960), cert. denied, 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692 (1961), we are required to make an independent evaluation of the facts to determine whether the accused received a fair trial, unfettered by outside influences. Sheppard v. Maxwell, supra, 384 U.S. at 362, 86 S.Ct. 1507, 16 L.Ed.2d 600. In our review, however, we have the benefit of a completed trial record. The instant record demonstrates that the trial judge, as well as counsel for defendants, conducted a painstaking, meticulous voir dire of the prospective jurors. The court excused those who stated that they had formed an opinion as to the defendants' guilt. In addition, the trial judge granted defendants the privilege of exercising thirtyfive peremptory challenges, as contrasted to the lesser number generally allowed under Rule 24(b), Fed.R.Crim.P. We believe that the qualifications possessed by the selected jurors exceeded the requirements for an impartial jury as articulated in Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).[1] See Koolish v. United States, supra, 340 F.2d at 526-528. In the instant case, the jury selection procedure resulted in the seating of a biracial jury of eight whites and four blacks. In addition, the jury verdicts reflect some degree of discernment in assessing the evidence, since the jury acquitted defendant Smith, whose complicity in the crimes was more questionable than that of the appellants. The record also shows that the great bulk of the publicity consisted of straight news reporting, which occurred nearly two months before trial. See United States ex rel. Rosenberg v. Mancusi, 445 F.2d 613, 617-18 (2d Cir. 1971). From our independent review of the facts, we are convinced of the correctness of the trial court's ruling on this issue.
 
 
 8
 We turn next to a discussion of the Bruton[2] issue and the contention of appellants, except Tasby, that the trial court erred in denying the pretrial motions for severance. Bruton requires a separate trial of joint defendants where "powerfully incriminating extrajudicial statements of a codefendant [will be] deliberately spread before the jury in [the event of] a joint trial." 391 U.S. at 135-136, 88 S.Ct. at 1628. On the record presented in this case, we deem the Bruton holding inapplicable. Here, after proper testimonial foundation concerning voluntariness, the trial court admitted testimony by FBI agents of the in-custody confessions made by each of the defendants. These witnesses, for the most part, avoided any specific identification of the confessor's accomplices. By thus avoiding identification of codefendants, this testimony did not violate the Bruton rule. See United States v. Fountain, 449 F.2d 629 (8th Cir., Sept. 28, 1971), and cases cited therein. Appellant Burkhalter's confession, however, may have implicated Bryant by making reference to the fact that one accomplice had a noticeable eye defect. Only defendant Bryant had such a defect. Law enforcement officers, however, had arrested Bryant during his actual participation in the crime. Under these circumstances, the indirect identification of Bryant is harmless error. Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).
 
 
 9
 We consider next the contention of Burkhalter, Feggett, and Bryant that the admission of their respective confessions was error, since law enforcement officers obtained each partly as a result of warrantless arrests alleged to be without probable cause. With this contention, appellants seek to apply the rationale of Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), to create an exclusionary rule for confessions obtained by police during detention following an unlawful arrest. We reject this contention for two reasons. First, the Supreme Court has not extended the Davis rationale to include a voluntary confession obtained by police under circumstances similar to those present here. In Davis the Supreme Court held inadmissible fingerprint evidence which had been obtained by police and used in a criminal prosecution, when such evidence had been seized during a period of unlawful detention. Secondly, at the time the confessions were obtained, the police had lawfully arrested Bryant during the perpetration of the crime, and they had probable cause for the second arrests of the other appellants. Even assuming, as contended, that the first arrests of Burkhalter, Tasby, and Feggett were without probable cause, we think that the record adequately establishes the validity of the second arrests. Prior to the latter, the police had general information concerning the crimes under investigation, and due to the demand for their release after the first arrests, defendants Tasby, Burkhalter, and Feggett were specifically implicated in the kidnapping. This demand for their release properly served to elevate the authorities' suspicions to certainty that the arrested trio was part of the kidnapping confederacy. Assuming, arguendo, the illegality of the first arrests, nothing of record suggests that any police conduct occurring after the first arrests induced the subsequent confessions made following the second, legally valid arrests, cf. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The dispositive factor is appellants' failure to establish that the confessions were prompted by any illegal police procedures. Allen v. Cupp, 426 F.2d 756, 760 (9th Cir. 1970); see United States v. Holland, 438 F.2d 887, 889 (6th Cir. 1971); Capparella v. Boslow, 308 F.Supp. 209, 217-18 (D.Md.1970); cf. United States v. Burhannon, 388 F.2d 961, 964 (7th Cir. 1968). Under these circumstances, the trial court properly admitted the confession of each of the defendants.
 
 
 10
 Appellant Feggett attacks one aspect of his Miranda warnings, which were given to him following his second arrest, as being inadequate because he was advised that an attorney would be appointed "at the proper time." This statement, even though a slight deviation from the Miranda prescription, does not negate the over-all effectiveness of the warning. See United States v. Barnhill, 429 F.2d 340, 343 (8th Cir. 1970); Klingler v. United States, 409 F.2d 299, 308 (8th Cir. 1969), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969).
 
 
 11
 We have carefully examined the record as it relates to the introduction of evidence of each of the appellants' confessions, and find no trial court error. The testimony clearly establishes that each was adequately advised of his constitutional rights, and each waived the Fifth Amendment privilege not to speak.[3] During trial, none of the counsel for the defendants seriously questioned the voluntariness of any of the confessions, and none requested a Jackson v. Denno[4] hearing on the issue of voluntariness prior to the time that the testimony relating to the confessions was presented to the jury. We find no merit, therefore, in the attacks on the admissibility of the defendants' confessions.
 
 
 12
 We turn finally to the remaining claims of error raised by the several appellants. We have considered all of these claims and find them to be without merit. No abuse of trial court discretion was committed in denying a continuance for the purpose of additional trial preparation. The record demonstrates that the court granted the defense adequate time for preparation, and counsel for all of the defendants conducted themselves ably in the trial and appeal of this case. Moreover, we find no prejudicial error committed by the trial court in the conduct of the trial or in the admission of any of the evidence. Finally, Bryant's appellate counsel presented an adequate brief on behalf of his indigent client, and ably argued the case before us. Bryant's counsel has assured this court that any prior association between his partner and the Vickers family in no way created any personal conflict of interest. We are satisfied, from our examination of the record and briefs, with the apparent truth of this representation.
 
 
 13
 We think it appropriate, in this context, to comment upon the presentation by the United States Government as appellee in this case. While the United States Attorney's Office for the Western District of Arkansas appears to have presented a vigorous trial of this case, the briefs on appeal left much to be desired. We found the government's written briefs to be singularly unhelpful to us in resolving the issues on this appeal, and we feel constrained to call attention to this inadequacy.
 
 
 14
 The convictions of all defendants stand affirmed.
 
 
 
 [1]
 That case held that "[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." 366 U.S. at 723, 81 S.Ct. at 1643
 
 
 [2]
 Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)
 
 
 [3]
 Appellant Bryant's attack on the introduction of his confession is founded on the premise that because the police did not ascertain his literacy before giving him a written warning of his rights, those rights were not "knowingly and intelligently" waived. We find no merit in this attack; the record adequately established that Bryant could both read and write
 
 
 [4]
 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)