Dora Jean ORIGEL, Individually and as Next Friend of Willard Daniel Noble, a Minor, Plaintiffs,

v.

WASHTENAW COUNTY, a body politic, Washtenaw County Prosecutor, William F. Delhey, and Jack Holmes, Jointly and severally, Defendants.

Civ. A. No. 82–60175.

United States District Court, E.D. Michigan, S.D.

Oct. 19, 1982.

MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is a 42 U.S.C. § 1983 action brought by Dora Jean Origel, individually, and as next friend of her minor son, Willard Daniel Noble. The three defendants are Washtenaw County, William F. Delhey, the Washtenaw County Prosecutor, and Jack Holmes, an Assistant Washtenaw County Prosecutor. The case is now before the court on defendant Delhey's motion to dismiss or, in the alternative, for summary judgment. For the reasons given below, the motion is granted, the case is dismissed and judgment should be entered for the defendants.

The relevant facts are few in number. Plaintiff-mother gave birth to her son on June 15, 1971, out of wedlock and while residing in Washtenaw County. Ms. Origel, then Ms. Noble, first requested the Washtenaw County Prosecutor's Office to initiate a paternity action against putative father "David Smith" or "Willard David Smith" on May 4, 1971, prior to the birth of the child, in order to establish or continue her eligibility for Medicaid. The court has no record of whether a paternity action was, in fact, commenced against Mr. Smith.

Ms. Origel apparently later changed her opinion as to the identity of her son's father. On June 28, 1976, at her request and pursuant to M.C.L.A. § 722.714, the Washtenaw County Prosecutor's Office commenced a paternity action against one Earl Charles Johnson. *Dora Jean Noble v. Earl Charles Johnson*, No. 76–11840. However, this action was dismissed on January 31, 1977 for failure to obtain service on the putative father.

On June 13, 1977, the Prosecutor's Office through Assistant Prosecutor Holmes, commenced a second action against Mr. Johnson. *Dora Jean Noble v. Earl Charles Johnson*, No. 77–13335. Mr. Johnson seems to have been properly served, but this second action was dismissed September 11, 1978 for lack of progress. Mich. GCR 501.3. On September 4, 1981, Holmes filed a motion to reinstate nunc pro tunc, but the motion was denied December 3, 1981.

David H. Fried, Fried & Sniokaitis, Detroit, Mich., for plaintiffs.

Elizabeth Osgood Pollard, Ann Arbor, Mich., for defendants.

Plaintiffs commenced this action on May 20, 1982, alleging that defendants' inaction resulting in the dismissal of the second paternity suit for lack of progress violated plaintiffs' rights under the Fourteenth Amendment to the U.S. Constitution.

## DISCUSSION

Defendant William F. Delhey advances four arguments in support of his motion: 1) the complaint fails to state a cause of action under 42 U.S.C. § 1983; 2) William Delhey cannot be held liable on a theory of *respondeat superior* for the alleged malpractice of defendant Holmes; 3) William Delhey is absolutely immune from liability; and 4) plaintiffs' action is barred by the statute of limitations. These arguments are addressed individually below.

### 1. *Failure to State a Cause of Action*

A 42 U.S.C. § 1983 complaint requires two specific allegations. First, the plaintiffs must allege that some person has deprived them of a *federal* right. Second, plaintiffs must allege that the person or persons who deprived them of that right acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572 (1980). Clearly, defendants acted under color of state law, and plaintiffs have so alleged. Therefore, the court must determine only whether plaintiffs have alleged deprivation of some *federal* right.

Section 1983 provides a remedy for deprivations of rights secured both by the U.S. Constitution and by federal statutes. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Plaintiffs have not alleged that they were deprived of any federal statutory rights. However, plaintiffs have alleged, in the very first paragraph of the complaint, that their action arises under the Due Process and Equal Protection clauses of the Fourteenth Amendment. Therefore, the precise issue before the court is whether it is beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). If it is *not* beyond doubt, then the motion must be denied.

After a very careful examination of all the allegations of the complaint, and accepting them as true, the court concludes that plaintiffs could prove, *at most,* that defendants committed legal malpractice. And malpractice, at least in this *civil* setting, is not a denial of Due Process or Equal Protection. *Ehn v. Price,* 372 F.Supp. 151 (N.D.Ill.1974); *Tasby v. Peek,* 396 F.Supp. 952 (W.D.Ark.1975).

The complaint alleges in paragraph 16 that

The Defendants herein and their agents and employees have a duty to provide services to those persons who seek their services and to act in compliance with the Fourteenth Amendment. . . .

Paragraph 18 alleges that the defendant Holmes "failed to provide adequate services to those persons to whom services were to be rendered." Paragraph 19 alleges that "Defendants were in gross violation of their duties and responsibilities to render services to Plaintiff as a result of the relationship which was created between them by operation of law." Finally, paragraph 20 alleges that "Defendants abandoned their responsibility to Plaintiffs and were derelict in their obligation under the Fourteenth Amendment. . . ."

Plaintiffs have no federal constitutional right even to be represented by the County Prosecutor's Office in paternity proceedings. That right is created by state law. M.C.L.A. § 722.714(c). Plaintiffs certainly *do* have the constitutional right to have the law applied to them in accordance with the Due Process and Equal Protection clauses of the Fourteenth Amendment. However, even assuming, as the court has done, that plaintiffs prove everything alleged above, they would not establish that they were deprived of their constitutional rights to Due Process and Equal Protection.

Due Process does not encompass the right to be free of legal malpractice, although the court restricts its holding to

the civil setting in which this case arises.[1] Malpractice is a simple tort, and not every tort, even though it be committed by a state actor, rises to the level of a constitutional deprivation. The Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the states." *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981); *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Plaintiffs' remedy lies with the state courts.

Insofar as Equal Protection is concerned, the plaintiffs have not even alleged that they were somehow treated differently than other paternity complainants.

Since the complaint has failed to state a cause of action against any of the defendants, the complaint of both plaintiffs is dismissed in its entirety, as to all defendants. Fed.R.Civ.P. 12(b)(6).

### 2. *Respondeat Superior*

■ *Respondeat superior* is clearly not a basis for imposing § 1983 liability on public officials. *Coffy v. Multi-County Narcotics Bureau*, 600 F.2d 570, 580 (6th Cir. 1979). *See also, Rizzo v. Goode*, 423 U.S. 362, 373–77, 96 S.Ct. 598, 605–07, 46 L.Ed.2d 561 (1976); *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982).

■ A § 1983 plaintiff must allege that the official was somehow personally involved in the unconstitutional activity of the subordinate, e.g., that he actively participated in, encouraged or directed the illegal acts; or that he affirmatively implemented an unconstitutional policy; or that he tolerated a pattern of unconstitutional conduct by subordinates. *Coffy v. Multi-County Narcotics Bureau, supra; Rizzo v. Goode, supra; Hays v. Jefferson County, supra.*

Since the complaint fails to allege in any way that the defendant Delhey *caused* the claimed constitutional deprivation, it will be dismissed as against the defendant Delhey for this additional reason. Fed.R.Civ.P. 12(b)(6).

### 3. *Immunity*

■ *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) holds that a state prosecuting attorney who acts within the scope of his duties in initiating and pursuing a criminal prosecution is absolutely immune from liability under 42 U.S.C. § 1983. Although *Imbler* expressly restricted its holding to the criminal setting, subsequent cases have extended the mantle of absolute immunity to any "judicial" action, as distinguished from administrative and investigative actions, performed by the prosecutor. *Ross v. Meagan*, 638 F.2d 646 (3d Cir. 1981) (extradition); *Ledwith v. Douglas*, 568 F.2d 117 (8th Cir.1978) (deceptive and unfair trade practices suit); *Flood v. Harrington*, 532 F.2d 1248 (9th Cir.1976) (tax collection); *Sebastian v. U.S.*, 531 F.2d 900 (8th Cir.), *cert. denied*, 429 U.S. 856, 97 S.Ct. 153, 50 L.Ed.2d 133 (1976) (civil commitment).

Certainly the activities complained of here were within the scope of defendant Delhey's official duties. M.C.L.A. § 722.-714. The Michigan courts have held that paternity actions are neither clearly criminal nor clearly civil in nature, but partake of the nature of both. *E.g., McDaniel v. Jackson*, 78 Mich.App. 218, 259 N.W.2d 563 (1977). Thus, defendant Delhey should be absolutely immune unless there is some good reason not to extend *Imbler's* holding to this situation.

Plaintiffs have argued with some force that the policy underlying prosecutorial immunity—encouraging vigorous enforcement of the laws—would be undercut rather than advanced if Delhey is given absolute immunity. They reason that since the gravaman

---

1. Conceivably, denial of the right of access to the courts could serve as the constitutional basis for a § 1983 action in this situation. *Henriksen v. Bentley*, 644 F.2d 852 (10th Cir. 1981); *Inada v. Sullivan*, 523 F.2d 485 (7th Cir.

1975). However, the complaint certainly does not allege this, and the court seriously doubts whether these plaintiffs could prove such a claim.

of the complaint is defendants' failure to vigorously prosecute Ms. Origel's paternity action, granting immunity here will promote prosecutorial sloth rather than prosecutorial diligence.

However, more than one consideration undergirds the doctrine of prosecutorial immunity.

These [considerations] include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust. *Imbler v. Pachtman, supra,* 424 U.S. at 423, 96 S.Ct. at 991.

On balance, the court concludes that this is a proper case for the application of the doctrine of prosecutorial immunity. Therefore, defendant Delhey's motion is granted, for this additional reason.

### 4. *Statute of Limitations*

The court is not prepared to rule on defendants' statute of limitations motion as to plaintiff Dora Jean Origel, since it is unclear on the present record when she knew or had reason to know of the injury which is the basis for this action. *Cox v. Stanton* 529 F.2d 47 (4th Cir.1975). Therefore, the statute of limitations is not now a separate and additional reason for granting the defendants' motion.

■ As to the plaintiff Willard Daniel Noble, the statute of limitations is not a ground for dismissing the action. Willard Daniel Noble is a minor and his cause of action cannot be barred since he has until his eighteenth birthday to file, M.C.L.A. § 600.5851(1), regardless of which statute of limitations applies.

The complaint of both plaintiffs is dismissed, and judgment should be entered for the defendants.

So ordered.